*Attorney Grievance Commission of Maryland v. Glenn Charles Lewis,* Miscellaneous Docket AG No. 80, September Term, 2012

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Respondent Glenn Charles Lewis violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in his capacity as representative of Lee-Ann Slosser. Lewis did not attend scheduled settlement conferences, made misrepresentations to his client and ignored her requests for updates, ignored his client's attempts to get him to withdraw his representation, kept an unearned fee, charged an unreasonable fee, and did not deposit and maintain his client's funds in trust or create the required records of such funds. Such conduct violated MLRPC Rule 1.1, MLRPC Rule 1.3, MLRPC Rule 1.4, MLRPC Rule 1.5, MLRPC Rule 1.15, MLRPC Rule 1.16, MLRPC Rule 8.1, MLRPC Rule 8.4(a), (c), and (d), and Maryland Rule 16-606.1. Taken together, Lewis's violations warrant disbarment.

Circuit Court for Montgomery County
Case No. 28357M
Argued: January 9, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 80

September Term, 2012

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GLENN CHARLES LEWIS

---

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

---

Opinion by Adkins, J.

---

Filed: February 27, 2014

Petitioner, Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, Glenn Charles Lewis. Bar Counsel alleged that Lewis, in connection with his representation of Lee-Ann Slosser, engaged in professional misconduct as defined by Maryland Rule 16-701(i) and violated the following Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), as adopted by Maryland Rule 16-812: (1) Rule 1.1 (Competence); (2) Rule 1.3 (Diligence); (3) Rule 1.4 (Communication); (4) Rule 1.5 (Fees); (5) Rule 1.15 (Safekeeping Property); (6) Rule 1.16 (Declining or Terminating Representation); (7) Rule 8.1 (Bar Admission and Disciplinary Matters); (8) Rule 8.4(a), (b), (c), and (d) (Misconduct); and (9) Maryland Rule 16-606.1 (Attorney trust account record-keeping). Following a hearing before the Circuit Court for Montgomery County, the hearing judge found that Lewis violated all of these rules, with the exception of Rule 8.4(b), which charge the AGC dropped after the hearing.

## THE HEARING JUDGE'S CONCLUSIONS

The disciplinary hearing was held before a judge of the Circuit Court for Montgomery County. Petitioner's counsel appeared and presented evidence. Lewis failed to appear. The hearing judge made the following findings of fact based upon clear and convincing evidence:

### Background

Respondent was admitted to the Bar of the State of Maryland on January 12, 2000. Respondent was admitted to the Bar of the State of Virginia on September 23, 1977 and the District of Columbia on May 26, 1978. Respondent was placed on interim suspension from the Virginia Bar on December 27, 2011 for failure to respond to a Bar Counsel subpoena. In

March 2012, Respondent was administratively suspended from the Virginia Bar for non-compliance with CLE requirements.

For many years, Respondent maintained a practice, The Lewis Law Firm, in the District of Columbia focusing on family law. Respondent abandoned his law practice in the fall of 2011. On December 29, 2011, Respondent and his wife filed a Petition for Chapter 7 Bankruptcy.

**Representation of Lee-Ann Slosser**

On January 11, 2011, Kenneth Slosser, through his attorney Wendy H. Schwartz, Esquire, filed a Complaint for Limited Divorce in the Circuit Court for Montgomery County naming his wife, Lee-Ann Slosser as defendant (*Slosser v. Slosser* Case No. 91547FL). On January 30, 2011, Ms. Slosser retained Respondent and his firm, The Lewis Law Firm, PC, to represent her. Ms. Slosser paid a retainer agreement in the amount of $60,000. On March 25, 2011, the Respondent filed Defendant's Answer and Counter-Claim for Limited Divorce.

On April 26, 2011, Respondent and one of his associates, Nupur S. Bal, Esquire, appeared on behalf of Ms. Slosser at a scheduling conference. Ms. Bal is a member of the District of Columbia bar and was admitted *pro hac vice* by consent order dated June 1, 2011. The consent order provided that the Respondent's presence may be waived for any proceeding. By order dated June 1, 2011 the parties were directed to attend mediation. On August 19, 2011 both parties filed pretrial statements.

Following the filing of the initial pleadings, the parties exchanged written discovery and designated expert witnesses. There were some discovery disputes which resulted in the filing of a motion for sanctions by Ms. Schwartz based on Respondent's complete failure to provide responses to written discovery, and a motion to compel by Respondent. Respondent never filed an opposition or response to Ms. Schwartz's motion for sanctions. Both motions were set for hearing to be held on October 12, 2011.

2

On September 23, 2011, the parties attended mediation. Mr. Slosser was present with Ms. Schwartz and Ms. Slosser was present with Respondent. On September 23, 2011, Respondent appeared one half hour late for mediation.

On September 24, 2011, the parties appeared for the second day of mediation. Respondent failed to appear without providing any explanation or prior notice to Ms. Slosser. Ms. Slosser did not consent to Respondent's failure to appear at the second day of mediation. Ms. Bal appeared in his place and an oral settlement agreement was reached. Following mediation, the parties, through counsel were [able] to reduce the terms of the settlement to writing.

On or about October 5, 2011, Ms. Bal left the Lewis Law Firm. By Line filed October 5, 2011, Ms. Bal withdrew from Ms. Slosser's case. By Joint Line filed October 11, 2011, the parties withdrew the pending discovery motions. The Joint Line was signed by Ms. Bal rather than Respondent.

Ms. Schwartz prepared a draft settlement agreement which was sen[t] to Respondent by email on October 13, 2011. Respondent, without explanation, waited until October 20, 2011 to contact Ms. Slosser regarding the draft settlement agreement. As of October 20, 2011, the Respondent had not read the settlement agreement. On October 20, 2011, Ms. Slosser and the Respondent reached an agreement about specific points and concerns in the settlement agreement to be raised with Ms. Schwartz. On October 20, 2011, Respondent promised Ms. Slosser that he would contact Ms. Schwartz the following day to finalize the settlement agreement. Time was of the essence as trial was still scheduled for November 14, 2011. As of October 24, 2011, the Respondent had failed to contact Ms. Schwartz and sent a "draft" email to Ms. Slosser directed to Ms. Schwartz for approval. The draft email was inflammatory and directly contradictory to Ms. Slosser's wishes as expressed in the October 20 telephone call. Additionally, the draft email contained inaccurate information. The draft email accused Ms. Schwartz and her associate of delay and intentionally failing to send a schedule to the agreement. By email dated October 24,

3

2011, Ms. Slosser pointed out that the missing schedule contained information already negotiated by Mr. and Ms. Slosser. The draft email was written by the Respondent to delay; as of October 24, 2011, the Respondent had not made the changes to the draft settlement agreement as requested by Ms. Slosser and agreed to by the Respondent.

On October 26, 2011, Ms. Slosser and the Respondent had a telephone conversation. During the October 26 conversation, the Respondent revealed that he had not yet spoken to Ms. Schwartz or made any changes to the draft settlement agreement. Ms. Slosser became upset with the Respondent and instructed him to immediately edit the draft settlement agreement as he had represented he would. The Respondent assured Ms. Slosser that he would edit the draft settlement agreement and send his edits to her for review. The Respondent never sent Ms. Slosser any edits to the draft settlement agreement. Instead, on October 26, 2011, Respondent emailed Ms. Schwartz claiming to have devoted "considerable effort" to his revisions and promising his revisions would be provided to her the following day. The Respondent forwarded his October 26, 2011 email to Ms. Schwartz to Ms. Slosser claiming, *inter alia*, that he would continue to "work hard." On October 27, 2011, Respondent failed to provide an edited draft settlement agreement to either Ms. Slosser or Ms. Schwartz. Ms. Slosser did not receive any communication from the Respondent until October 31, 2011. On October 31, 2011, the Respondent emailed Ms. Slosser and stated that he would "be in touch." On October 31, 2011, the Respondent also emailed Ms. Schwartz and again promised that his revisions to the draft settlement agreement would be provided later that day. Following October 31, Ms. Slosser attempted to contact the Respondent at both his office and on his cellular phone. The mailboxes for both phones were "full" and would not accept messages.

Between October 31, 2011 and the scheduled trial date, November 14, 2011, Respondent failed to respond to Ms. Slosser's requests for information and efforts to communicate with him. Ms. Slosser experienced considerable consternation

over Respondent's abandonment of her case and was forced to retain new counsel and incur additional attorney's fees.

On or about November 10, 2011, unable to contact Respondent, with a trial date pending and no settlement agreement in place, Ms. Slosser retained Margaret J. McK[i]nney, Esquire. Ms. McK[i]nn[e]y made several efforts to reach Respondent by telephone and email requesting, on behalf of Ms. Slosser, that he sign a line substituting counsel and withdraw from the Slosser matter. Unable to reach Respondent, on November 10, 2011, Ms. McK[i]nney entered her appearance on behalf of Ms. Slosser as co-counsel. Ms. McK[i]nney was able to complete the settlement agreement for Ms. Slosser and, by judgment dated March 16, 2012, Ms. and Mr. Slosser were granted a judgment of absolute divorce.

On November 14, 2011, the scheduled trial date, Ms. Slosser received an email from the Respondent attaching his "final version" of the settlement agreement, acknowledging that Ms. Slosser had retained new counsel, apologizing and acknowledging his delay in editing the settlement agreement. The November 14, [sic] email attempted to minimize the impact of his delay and abandonment on Ms. Slosser and her concern about the pending trial date.

On November 16, 2011, Ms. McKinney emailed the Respondent requesting, on behalf of Ms. Slosser, that he withdraw his appearance from the case and providing hi[m] with a line for his signature. The Respondent never responded to Ms. McKinney's email and never filed a line withdrawing his appearance.

Upon termination of the representation, Respondent failed to take any steps to protect Ms. Slosser's interests. He failed to return her client file and any unearned fee. He abandoned the representation within weeks of the scheduled trial date without finalizing a settlement and failed and refused to file a line withdrawing his appearance.

Between January 30, 2011 and August 31, 2011,

5

Respondent charged Ms. Slosser $201,330 for his services. Based on a review of the court file, Ms. Schwartz['s] billing records and the Respondent's billing records the court finds that the fees charged by the Respondent were unreasonable.

At the outset of the representation, Ms. Slosser paid the Respondent a $60,000 retainer fee. Respondent failed to deposit and maintain Ms. Slosser's funds in trust until earned and failed to create records as required by the Maryland Rules reflecting the receipt, maintenance and disbursement of Complainant's funds. Respondent misappropriated funds belonging to Ms. Slosser for his personal benefit.

### Bar Counsel Investigation

On January 17, 2012, Bar Counsel received Ms. Slosser's complaint regarding the Respondent. On February 10, 2012, Bar Counsel forwarded a copy of Ms. Slosser's complaint to Respondent and requested a written response within fifteen (15) days. The February 10 letter was sent to Respondent's address listed with the Client Protection Fund. On March 15, 2012, no response having been received, Bar Counsel sent a second letter to Respondent at the address listed with the Client Protection Fund by certified mail return receipt. The March 15 letter enclosed the complaint and the February 10 letter and requested a written response within ten (10) days.

On May 1, 2012, Robert C. Versis, Investigator for the Petitioner, contacted the Respondent by telephone. The Respondent informed Mr. Versis that he was currently receiving mail at his home address and provided same to Mr. Versis. On May 2, 2012, no response having been received to the March 15 letter, Bar Counsel sent a letter by certified mail return receipt, restricted delivery to Respondent's home address. The May 2 letter enclosed the previous letters and was received by "Cara Lewis" on May 5, 2012. As of May 5, 2012, Cara Lewis resided at the Respondent's residence. The May 2, 2012 letter requested a written response to the complaint as well as a copy of Ms. Slosser's file and all records created and maintained by Respondent pursuant to Maryland Rule 16-606.1 for the receipt

6

and disbursement of Ms. Slosser's funds. The information was to be provided to Bar Counsel no later than May 16, 2012.

No response having been received, Mr. Versis attempted to contact the Respondent by telephone on May 18, 21, 22, 23, 25 and 29, 2012 and by email on May 22, 2012. The Respondent did not respond to Mr. Versis's email or voicemail message. On May 30, 2012, no response having been received to Bar Counsel's letter of May 2, 2012, Mr. Versis personally served Respondent at his home with copies of the complaint and letters of February 10, March 15 and May 2, 2012. Respondent failed to provide any written response to Bar Counsel.

From these facts, the hearing judge found that Lewis violated the following rules:

### Rule 1.1. Competence.

MLRPC 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Respondent violated Rule 1.1 when he failed to act with the required thoroughness and preparation reasonably necessary for the representation of Ms. Slosser as outlined in the discussion of Rule 1.3 below.

### Rule 1.3. Diligence.

MLRPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

Respondent violated Rule 1.3 when he failed to appear for mediation on September 24, 2011 without Ms. Slosser's consent, when he abandoned Ms. Slosser's case, when he failed to timely review the draft settlement agreement, when he fail[ed] to timely revise the draft settlement agreement and submit it to either his client for review or opposing counsel for consideration despite repeated promises to do [the] same, and when he failed to withdraw his representation as requested by his client.

7

## Rule 1.4. Communication.

MLRPC 1.4 provides:

(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Respondent violated Rule 1.4 when he failed to communicate with Ms. Slosser that he would not appear for mediation on September 24, 2011, when he failed to timely respond to Ms. Slosser's requests for information about revisions to the draft settlement agreement, when he failed to respond to Ms. Slosser, through successor counsel, regarding the termination of the representation and request that he withdraw his appearance.

## Rule 1.5. Fees.

MLRPC 1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The fact[or]s to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

Respondent violated Rule 1.5 when he charged and collected an unreasonable fee from Ms. Slosser for the representation provided. A review of the court file reveals that the work the Respondent did on behalf of Ms. Slosser, does not justify the fees charged and collected. Respondent filed an answer and counter-claim. He propounded discovery but failed to respond to discovery propounded by the plaintiff/counter-defendant. Respondent filed a motion to compel but failed to file a response to the plaintiff/counter-defendant's motion for sanctions. Respondent designated an expert witness and filed a pre-trial statement but no further discovery was done. No depositions were noted or taken and, as discussed above, Respondent failed to appear for the second day of mediation and failed to review and revise the draft settlement agreement prepared by opposing counsel. Additionally, the court reviewed the billing statement of opposing counsel which is approximately 1/4 of the amount charged by the Respondent for representation in the same matter. Respondent's own billing statements do not support a conclusion that the fees charged and

collected were reasonable.

## Rule 1.15. Safekeeping Property.

MLRPC 1.15 provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

[*   *   *]

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.
(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

Respondent violated Rule 1.15(a) when he failed to deposit and maintain Ms. Slosser's retainer fee in trust until earned without receiving informed consent, confirmed in writing, to a different arrangement from Ms. Slosser.

**Rule 1.16. Declining or Terminating Representation.**

MLRPC 1.16 provides:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) the lawyer is discharged[.]

[*   *   *]

(d) Upon termination of representation, a lawyer shall take[]steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

The Respondent violated Rule 1.16(a) when he failed to withdraw from the representation of Ms. Slosser despite repeated requests and when he abandoned the representation of Ms. Slosser without notice during a critical period of time of the representation causing both emotional and financial harm to his client. The Respondent violated Rule 1.16[(d)] when, following termination by and abandonment of Ms. Slosser, the Respondent failed to provide a copy of Ms. Slosser's file or return any unearned fees to her.

**Rule 8.1. Bar Admission and Disciplinary Matters.**

MLRPC 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in

connection with a disciplinary matter, shall not:

[*     *     *]

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have aris[en] in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

Respondent violated Rule 8.1(b) each time he failed to respond[] to Bar Counsel's lawful demand for information including Bar Counsel's letters dated February 10, 2012, March 15, 2012 and May 2, 2012. Respondent violated Rule 8.1(b) when he failed to respond to Mr. Versis' phone calls and email messages of May 18, 21, 22, 23, 25 and 29, 2012.

**Rule 8.4. Misconduct.**

MLRPC 8.4 provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct,

[*     *     *]

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

The Court, as discussed herein, having concluded that Respondent violated Rules 1.1, 1.3, 1.4, 1.5, 1.15, 1.16, 8.4(c), and (d) concludes that Respondent has also committed misconduct in violation of Rule 8.4(a). *See Att'y Griev. Comm'n v. Foltz*, 411 Md. 359, 411, 983 A.2d 434, 465 (2009) (internal citations omitted).

12

Respondent violated Rule 8.4(c) when he charged an unreasonable fee, when h[e] misappropriated funds belong[ing] to Ms. Slosser for his personal benefit and when he made misrepresentations to both Ms. Slosser and opposing counsel related to the status of his review and revision of the settlement agreement.

Respondent's conduct, taken as a whole, violates Rule 8.4(d).

## [Maryland] Rule 16-606.1. Attorney trust account record-keeping

Title 16, Courts, Judges, and Attorneys, Rule 16-606.1 provides:

(a) **Creation of records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:
(1) Attorney trust account identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.
(2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:
(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;
(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;
(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

13

(3) Client matter records.  A record for each client matter in which the attorney receives fund[s] in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and

(B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client

(4) Record of funds of the attorney.  A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 16-607 b.

(b) **Monthly reconciliation**.  An attorney shall cause to be created a monthly reconciliation of all attorney trust account records, client matter records, records of funds of the attorney held in an attorney trust account as permitted by Rule 16-607 b, and the adjusted month-end financial institution statement balance[.]  The adjusted month-end financial institution statement balance is computed by adding subsequent deposits to and subtracting subsequent disbursements from the financial institution's month-end statement balance.

(c) **Electronic records.**  Whenever the records required by this Rule are created or maintained using electronic means, there must be an ability to print a paper copy of the records upon a reasonable request to do so.

(d) **Records to be maintained**. Financial institution month-end statements, any canceled checks or copies of canceled checks provided with a financial institution month-end statement, duplicate deposit slips or deposit receipts generated by the financial [institution], and records created in accordance with section (a) of this Rule shall be maintained for a period of at least five years after the [date] the record was created.

The Respondent violated Rule 16-606.1 when he failed to create records reflecting the receipt, maintenance and disbursement of Ms. Slosser's funds.

## Mitigation

No evidence related to mitigation was offered and the court finds no mitigation.

## DISCUSSION

As we recently explained:

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Att'y Grievance Comm'n v. Bleecker*, 414 Md. 147, 167, 994 A.2d 928, 940 (2010) (citations omitted). "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Att'y Grievance Comm'n v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010). That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. *Id*. at 707, 4 A.3d at 964. In that regard, "[t]he hearing judge is permitted to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Att'y Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006) (quoting *Att'y Grievance Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000)).

We review *de novo* the hearing judge's proposed conclusions of law. *Att'y Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 236 (2008). In other words, "the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court." *Att'y Grievance Comm'n v. Garfield*, 369 Md. 85, 97, 797 A.2d 757, 764 (2002). In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a "clear and convincing" standard of proof. *Att'y Grievance Comm'n v. Siskind*, 401 Md. 41, 54, 930 A.2d 328, 335 (2007).

*Att'y Grievance Comm'n v. Tanko*, 427 Md. 15, 27–28, 45 A.3d 281, 288 (2012).

## EXCEPTIONS

Neither Lewis nor Petitioner note any exceptions to the hearing judge's findings of fact or conclusions of law. Thus, pursuant to Md. Rule 16-759(b)(2)(A), we shall accept those findings of fact as established. ("If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any."). Additionally, based on our *de novo* review, we agree with the hearing judge that Lewis violated the following provisions of the MLRPC: Rule 1.1, Rule 1.3, Rule 1.4, Rule 1.5, Rule 1.15(a), Rule 1.16(a) and (b), Rule 8.1(b), Rule 8.4(a), (c), and (d), and Maryland Rule 16-606.1. Accordingly, we proceed to the determination of the appropriate sanction.

## SANCTION

Bar Counsel recommends that Lewis be disbarred. They direct our attention to six aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions (1992) ("the Standards"). First, pursuant to Standard 9.22(b), Bar Counsel characterizes Lewis's misconduct as resulting, at least partially, from a dishonest or selfish motive. Bar Counsel also points to Lewis's substantial experience in the practice of law (Standard 9.22(i)), his pattern of misconduct (Standard 9.22(c)), his multiple offenses (Standard 9.22(d)), his refusal to acknowledge the wrongful nature of his conduct (Standard 9.22 (g)), his failure to respond to Bar Counsel's requests for information, and his indifference to making restitution (Standard 9.22(e), (j)).

Petitioner then directs our attention to Standard 4.41. This provides that:

> Disbarment is generally appropriate when: (a) a lawyer
> abandons the practice and causes serious or potentially serious

16

injury to a client; or (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

Petitioner then explains that Lewis abandoned Ms. Slosser's case at a time that could have caused her serious injury, knowingly failed to perform the services for which he was hired, and engaged in a pattern of neglect. Bar Counsel reiterates the hearing judge's findings that Lewis's neglect, abandonment and misrepresentations happened during a critical litigation period, during the short period of time between mediation and trial. This behavior led to his client having to incur additional fees to retain new counsel, as well as much personal consternation.

In determining the appropriate sanction in attorney discipline matters, we are guided by our "interest in protecting the public and the public's confidence in the legal profession." *Att'y Grievance Comm'n v. Pennington*, 387 Md. 565, 595, 876 A.2d 642, 660 (2005) (citations omitted). Because of this, our purpose in deciding the appropriate sanction is not to punish the lawyer, but to protect the public, and "deter other lawyers from engaging in similar misconduct." *Pennington*, 387 Md. at 596, 876 A.2d at 660.

This Court often looks to the aggravating factors found in Standard 9.22 of the Standards for guidance in determining the appropriate sanction. *Att'y Grievance Comm'n v. Bleecker*, 414 Md. 147, 176–77, 994 A.2d 928, 945–46 (2010) (citing *Att'y Grievance Comm'n v. Harris*, 403 Md. 142, 167–68, 939 A.2d 732, 747 (2008)). Here, we find Lewis's

17

conduct to be particularly egregious and deleterious to not only his client, but to the public perception of lawyers at-large. Lewis's multiple misrepresentations to his client evidence a lack of basic integrity that demonstrates a danger to any member of the public that would seek his services. As we held in *Att'y Grievance Comm'n v. Vanderlinde*, "[h]onesty and dishonesty are, or are not, present in any attorney's character. Disbarment ordinarily should be the sanction for intentional dishonest conduct." 364 Md. 376, 418, 773 A.2d 463, 488 (2001). Pertaining to Lewis's failure to communicate with Ms. Slosser, his subsequent abandonment of Ms. Slosser, his repeated ignoring of Ms. Slosser's requests for status updates, and his failure to return her files and unearned fees, we are guided by our holding in *Att'y Grievance Comm'n v. Heung Sik Park*, 427 Md. 180, 46 A.3d 1153 (2012). In that case, we held that:

> [D]isbarment is the appropriate sanction when an attorney abandons a client by failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees.

*Heung Sik Park*, 427 Md. at 196, 46 A.3d at 1162. In this case the relevant facts are nearly identical. Lewis did not attend scheduled settlement conferences, made misrepresentations to his client and ignored her requests for updates, ignored his client's attempts to get him to withdraw his representation, kept an unearned fee, charged an unreasonable fee, and did not deposit and maintain his client's funds in trust or create the required records of such funds.

Accordingly, we order disbarment.

18

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST GLENN CHARLES LEWIS.**