*Attorney Grievance Commission of Maryland v. Alisha Ann Portillo*, Misc. Docket AG No. 22, September Term, 2020. Opinion by Biran, J.

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT**

The Court of Appeals disbarred Respondent, Alisha Ann Portillo, from the practice of law in Maryland. Ms. Portillo violated Maryland Attorneys' Rules of Professional Conduct 19-301.1, 19-301.4(a) and (b), 19-303.3(a)(1), 19-308.1(a), and 19-308.4(a), (c), and (d). Disbarment is the appropriate sanction for Ms. Portillo, who engaged in serious misconduct in two client matters. Ms. Portillo advised both clients that failing to appear for their immigration hearings was an acceptable option. Based on Ms. Portillo's improper advice, both clients decided not to appear for their hearings, resulting in the immigration court issuing orders for their removal from the United States. Ms. Portillo also made knowing and intentional false statements to the immigration court and to Bar Counsel, and failed to participate in these proceedings.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 22

September Term, 2020

———————————————————

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

ALISHA ANN PORTILLO

———————————————————

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

———————————————————

Opinion by Biran, J.

———————————————————

Filed: May 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

As an officer of the court, a Maryland attorney should not advise a client that failing to appear at a court hearing at which the client's presence has been ordered is an acceptable option. This case concerns an attorney, Alisha Ann Portillo, who gave that improper advice to two immigration clients. To make matters worse, after the clients failed to appear for their hearings based on Ms. Portillo's advice, Ms. Portillo made false statements to the presiding immigration judges about the clients' whereabouts and her firm's last contacts with the clients. And, after the clients subsequently complained about Ms. Portillo's actions, Ms. Portillo provided false and misleading statements to Bar Counsel. In light of this serious misconduct, on March 26, 2021, we issued a *per curiam* order disbarring Ms. Portillo. *Attorney Grievance Comm'n v. Portillo*, 472 Md. 721 (2021). We explain in this opinion the reasons for that action.

## I

## Background

On July 15, 2020, the Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Ms. Portillo, in connection with two complaints filed by former clients concerning their immigration matters. Petitioner alleged that Ms. Portillo violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-301.1 (Competence), 19-301.3 (Diligence), 19-301.4(a) and (b) (Communication), 19-303.3(a)(1) (Candor

Toward the Tribunal), 19-308.1(a) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct).[1]

On July 17, 2020, under Maryland Rules 19-722(a) and 19-727, this Court designated the Honorable Joan E. Ryon of the Circuit Court for Montgomery County to conduct an evidentiary hearing, and to issue findings of fact and conclusions of law. Thereafter, Ms. Portillo was served with a writ of summons, the Petition, Petitioner's interrogatories and request for production of documents, and request for admissions of facts and genuineness of documents. Ms. Portillo failed to comply with Petitioner's discovery requests and to respond to the charges filed against her. The hearing judge entered an order of default on October 21, 2020. The circuit court provided Ms. Portillo with notice of the order of default, which advised Ms. Portillo that she could move to vacate the order of default within 30 days after its entry. Ms. Portillo did not move to vacate the order of default.

On November 25, 2020, the hearing judge conducted an evidentiary hearing remotely via Zoom for Government. Bar Counsel appeared, but Ms. Portillo did not. Under Maryland Rule 2-424(b), the matters set forth in Petitioner's request for admissions of facts and genuineness of documents were deemed admitted, and the hearing judge received those

---

[1] The Maryland Attorneys' Rules of Professional Conduct are codified as Maryland Rule 19-300.1 *et seq*. In an effort to enhance readability, we use abbreviated references to the prior codifications of these rules, which are consistent with the ABA Model Rules on which they are based (*e.g.,* Maryland Rule 19-301.1 will be referred to as Rule 1.1). *See* ABA Compendium of Professional Responsibility Rules and Standards (Am. Bar Ass'n 2017).

admissions and documents in evidence. On January 13, 2021, the hearing judge issued findings of fact and conclusions of law. Neither party filed exceptions.

On February 11, 2021, Petitioner filed a request to waive oral argument in this Court. On February 16, 2021, we entered an order directing Ms. Portillo to show cause why oral argument should be held; Ms. Portillo did not respond. On March 10, 2021, we granted Petitioner's request to waive oral argument. We subsequently considered this case on the papers.

## II

## The Hearing Judge's Findings of Fact

We summarize here the hearing judge's findings of fact.

### Background

Ms. Portillo was admitted to the Maryland Bar on June 17, 2014. During the period relevant to this case, Ms. Portillo was employed at the Law Offices of Hale W. Hawbecker, PLLC (the "Firm"), in Woodbridge, Virginia.

### Representation of M.D.

M.D. left her native country of El Salvador in August 2016 and entered the United States on September 3, 2016. She was detained in Texas and placed in removal proceedings. On October 19, 2016, M.D. was released on bond and moved to Fairfax, Virginia. In January 2017, her case was transferred to the immigration court in Arlington, Virginia, and a Master Calendar Hearing was scheduled for October 5, 2017.

On August 23, 2017, M.D. met with Mr. Hawbecker and retained the Firm to represent her. She executed a retainer agreement that provided for a flat fee of $6,000, with

3

$1,000 to be paid at the outset, $500 by September 13, 2017, and $250 per month until paid in full. After the initial meeting, Mr. Hawbecker assigned Ms. Portillo to handle M.D.'s case. Although Mr. Hawbecker oversaw the Firm's immigration matters, Ms. Portillo was the attorney responsible for M.D.'s matter.

A paralegal at the Firm prepared M.D.'s asylum petition. The petition stated that M.D. left El Salvador and feared returning because she was abused and threatened by her partner's brother, who was a gang member. Ms. Portillo reviewed the asylum petition, and on August 31, 2017, filed the petition in the Arlington immigration court, as well as her notice of appearance on behalf of M.D.

On October 5, 2017, Ms. Portillo appeared with M.D. at the Master Calendar Hearing. The court scheduled M.D.'s individual hearing for December 11, 2018. Ms. Portillo told M.D. that, prior to the December 2018 hearing, M.D would need to provide her with additional evidence to support her asylum petition.

In November 2018, Ms. Portillo reviewed M.D.'s file and realized that M.D. had not provided her with any additional corroborating evidence. Ms. Portillo called and left voicemails for M.D. three times between November 2018 and December 3, 2018, but did not receive a response prior to December 4, 2018.

On December 4, 2018, having not heard from M.D., Ms. Portillo prepared and filed a supplement to M.D.'s asylum application. The supplement contained general evidence addressing the treatment of El Salvador's lesbian, gay, bisexual, and transgender community. On December 10, 2018, M.D. called the firm about her hearing the next day. The receptionist told M.D. to come to the office at 10:00 a.m. the following day to meet

4

with Ms. Portillo prior to the 1:00 p.m. hearing, which M.D. did. Although Ms. Portillo can speak Spanish, Ms. Portillo frequently used interpreters during her meetings. At the meeting between M.D. and Ms. Portillo on the morning of December 10, 2018, Ms. Portillo's assistant served as an interpreter.

Ms. Portillo advised M.D. during the meeting that M.D.'s case was weak and that she would likely be deported if she appeared at the hearing. Ms. Portillo advised M.D. that, if the court denied her asylum application, M.D. could appeal the decision, but it would cost an additional $2,500 in legal fees. Ms. Portillo further advised M.D. that M.D. would be able to remain in the United States longer if she did not appear for the hearing. At the conclusion of their meeting, Ms. Portillo told M.D. that she had until noon to decide whether to appear at the 1:00 p.m. hearing that afternoon.

Based on Ms. Portillo's advice, M.D. decided not to appear for the hearing. Ms. Portillo told M.D. that she would inform the immigration court that she had lost contact with M.D. after the October 2017 hearing.

Ms. Portillo appeared at M.D.'s hearing that afternoon. When the immigration court asked Ms. Portillo about her communications with M.D., Ms. Portillo knowingly made false statements to the court:

> [O]ur office's last communication with [M.D.] was in May of 2018, when we had her come in and do her application for her biometrics appointment. In October, we were calling her last known phone number and not receiving a response. We ended up mailing out a letter at the end of October, and from that letter, her ex-partner contacted our office and told us that she had left in October and returned to El Salvador, and they were no longer together and no longer on speaking terms.

5

The hearing judge found that "Ms. Portillo fabricated her alleged communications with M.D.'s partner to mislead the immigration court regarding M.D.'s whereabouts."

Based on M.D.'s failure to appear at the hearing and Ms. Portillo's false information, the immigration court deemed M.D.'s asylum application abandoned and ordered M.D. removed to El Salvador. The hearing judge found that, as a result of the removal order, M.D. could have been arrested and deported at any time.

*Complaint of M.D.*

On February 12, 2019, M.D. filed a complaint with Bar Counsel. On March 5, 2019, Bar Counsel wrote to Ms. Portillo, enclosed the complaint, and requested a response. Ms. Portillo submitted written responses to Bar Counsel on March 25, 2019 and June 6, 2019. In both responses, Ms. Portillo failed to disclose her false statements to the immigration court. The hearing judge found that Ms. Portillo's statements to Bar Counsel were knowingly and intentionally misleading.

*Representation of M.R.*

M.R. and her minor son, V.S., left their native country of El Salvador in October 2013 and entered the United States on November 20, 2013. They were detained in Texas and placed in removal proceedings. On November 25, 2013, M.R. and V.S. were released and moved to Maryland to live with G.H., M.R.'s fiancé and V.S.'s father. M.R. and G.H. were married in August 2014.

On or about June 15, 2014, M.R. and G.H. met with Mr. Hawbecker and retained the Firm to represent M.R. V.S. was a derivative party in M.R.'s immigration proceedings. M.R. executed a retainer agreement that provided for a flat fee of $3,250. M.R. made an

6

initial payment of $1,000 that day and monthly payments thereafter. On August 13, 2014, Mr. Hawbecker filed a request to change venue from Houston, Texas to Arlington, Virginia. On November 28, 2014, Mr. Hawbecker lodged an asylum application with the immigration court in Houston.

In early 2015, M.R.'s case was transferred to the immigration court in Arlington, Virginia, and thereafter to Baltimore. On March 8, 2016, Mr. Hawbecker filed an asylum application on behalf of M.R. in the immigration court in Baltimore, and M.R.'s individual hearing was scheduled for August 21, 2018.

In June 2017, Ms. Portillo began working for the Firm, and Mr. Hawbecker assigned M.R.'s case to Ms. Portillo. Ms. Portillo was the attorney responsible for M.R.'s matter at the Firm.

In May 2018, having reviewed M.R.'s case file, Ms. Portillo called M.R. and requested that she schedule a meeting and provide additional evidence to support her application. In late May 2018, M.R. and G.H. delivered the requested documents to the Firm but did not meet with Ms. Portillo or anyone else that day. In early August 2018, Ms. Portillo called M.R. and left a message requesting that she schedule a meeting to prepare for the August 21 hearing. M.R. called the firm and scheduled a meeting for August 17, 2018.

On August 3, 2018, Ms. Portillo filed a supplement to M.R.'s asylum application. On August 17, 2018, M.R. and V.S. met with Ms. Portillo to prepare for the August 21 hearing. Ms. Portillo advised M.R. that she would likely lose her case and that the court would order her to leave the country in 30 days. Ms. Portillo told M.R. that it was M.R.'s

7

decision whether to attend the hearing. Based on Ms. Portillo's advice, M.R. was scared of being deported and did not appear at the hearing on August 21, 2018.

On August 21, 2018, Ms. Portillo appeared at M.R.'s hearing and made knowingly false statements to the immigration court:

> The last contact that our office had directly with the lead Respondent, [M.R.], was in March of 2016. Her husband has been the one that has been in contact with us and actually brought us evidence back in May, which we submitted in the supplement.
>
> However, when we brought her in to start her declaration, the husband informed us that [V.S.], who was enrolled in school, was having problems at school and moved in with his aunt, Reina (phonetic) in Virginia, and that [M.R.] and [V.S.] were living with Reina. We were given the phone number. When we spoke with Reina, Reina advised us that they had moved back with the husband, and the husband is stating that they do not reside there…. So we have lost contact with them. And we honestly don't know where they are. Both are saying that they live with the other.

The hearing judge found that "Ms. Portillo fabricated her alleged communications with M.R.'s husband and sister to deceive the immigration court."

Based on M.R.'s failure to appear for the hearing and Ms. Portillo's false information, the immigration court deemed M.R.'s asylum application abandoned and ordered M.R. and V.S. removed to El Salvador. The hearing judge found that, as a result of the removal order, M.R. and V.S. could have been arrested and deported at any time.

*Complaint of M.R.*

On March 20, 2019, M.R. filed a complaint with Bar Counsel. On April 12, 2019, Bar Counsel wrote to Ms. Portillo, enclosed the complaint, and requested a response. Ms. Portillo submitted her written response to Bar Counsel on May 20, 2019. In her response, Ms. Portillo stated that, leading up to the August 21, 2018 hearing date, she attempted to

8

contact M.R. on several occasions to schedule a meeting for August 17. Ms. Portillo further stated that M.R.'s husband called the office and advised that M.R. and V.S. were living with M.R.'s sister in Virginia. Ms. Portillo stated that she contacted M.R.'s sister, who said that M.R. and V.S. had moved back to Gaithersburg with M.R.'s husband. Ms. Portillo further stated in her response that she did not meet with M.R. or her family on August 17, 2018, or at any time prior to the August 21 hearing. The hearing judge found that Ms. Portillo's statements to Bar Counsel were knowingly false.

## III

## The Hearing Judge's Conclusions of Law

Based on the record and the above-summarized findings of fact, the hearing judge concluded, by clear and convincing evidence, that Ms. Portillo violated Rules 1.1, 1.3, 1.4(a) and (b), 3.3(a)(1), 8.1(a), and 8.4(a), (c), and (d). Neither Ms. Portillo nor Petitioner filed exceptions.

## IV

## Standard of Review

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding and conducts an independent review of the record. The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous. We review the hearing judge's conclusions of law without deference." *Attorney Grievance Comm'n v. Hoerauf*, 469 Md. 179, 207-08 (2020) (cleaned up). Where, as here, neither party files any exceptions to the hearing judge's findings of fact, we "may treat the findings of fact as

9

established." Md. Rule 19-741(b)(2)(A). We deem the hearing judge's findings of fact to be established in this case.

### Ms. Portillo's Violations of the Rules of Professional Conduct

We now consider the hearing judge's conclusions of law. For the reasons we discuss below, we hold that clear and convincing evidence demonstrates that Ms. Portillo violated Rules 1.1 (Competence), 1.4(a) and (b) (Communication), 3.3(a)(1) (Candor Toward the Tribunal), 8.1(a) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct). We conclude that Ms. Portillo did not violate Rule 1.3 (Diligence).

*Rule 1.1 (Competence)*

Rule 1.1 dictates that an attorney "shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Ms. Portillo violated Rule 1.1 in both client's matters when she suggested that M.D. and M.R. could decide not to appear for their individual hearings and told them that they likely would be able to stay in the United States longer if they failed to appear. Although Ms. Portillo may have correctly gauged that both clients were *unlikely* to prevail in their asylum applications, by suggesting that an acceptable and perhaps preferable option was to fail to appear – a choice that both clients made after receiving Ms. Portillo's advice – Ms. Portillo effectively eliminated any chance the clients had to succeed in their petitions. Ms. Portillo's deficient advice resulted in the immigration court deeming the clients' asylum applications abandoned and ordering M.D., M.R., and V.S. removed to El Salvador.

As the hearing judge noted, after they were ordered removed, both clients (and V.S.) could have been arrested and deported at any time. Although Ms. Portillo competently represented both clients initially, her serious lapse in judgment shortly before both clients' hearings negated the competent work she had done up to that point, and compels us to conclude that Ms. Portillo violated Rule 1.1.

*Rule 1.3 (Diligence)*

Rule 1.3 provides: "An attorney shall act with reasonable diligence and promptness in representing a client." Although we are greatly troubled by Ms. Portillo's conduct as found by the hearing judge, we do not perceive a lack of diligence on her part. In these two client matters, the problem was not that Ms. Portillo failed to act with promptness, neglected to review the case files or obtain necessary information from the clients, missed deadlines, failed to appear for the hearings herself, or otherwise neglected any important client-related matters. Dishonesty does not necessarily equate with a lack of diligence. Ms. Portillo failed her clients, the immigration court, Bar Counsel, and ultimately herself by violating several other rules of professional conduct, but she did not violate Rule 1.3.

*Rule 1.4 (Communication)*

Rule 1.4 provides:

> (a) An attorney shall:
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
> (2) keep the client reasonably informed about the status of the matter;
> (3) promptly comply with reasonable requests for information; and

11

(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.
(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

This Rule requires that attorneys "communicate with their clients and keep their clients reasonably informed of the status of their case." *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 699 (2019).

We agree with the hearing judge's conclusion that Ms. Portillo violated Rule 1.4(a) and (b) in both matters when she failed to adequately explain to M.D. and M.R. the consequences of not appearing for their individual hearings. Ms. Portillo further violated Rule 1.4(b) in both matters when she failed to adequately advise M.D. and M.R., preventing them from making informed decisions about their cases.

*Rule 3.3(a)(1) (Candor Toward the Tribunal)*

Rule 3.3(a)(1) provides that an attorney shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney." The duty of candor "stems from the proposition that every court has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it." *Hoerauf*, 469 Md. at 211 (internal quotation marks and citation omitted). Thus, Rule 3.3(a)(1) requires that an attorney be candid at all times with a tribunal. *Id.* Attorneys violate this rule when they knowingly provide a court with false information. *Id.*; *Attorney Grievance Comm'n v. Ambe*, 466 Md. 270, 295 (2019); *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 32 (2006).

12

The hearing judge found that Ms. Portillo violated Rule 3.3(a)(1) in both matters by knowingly and intentionally misrepresenting her communications with M.D. and M.R. with the intent to deceive the immigration court. Ms. Portillo falsely told the immigration court that her last communication with M.D. took place in May 2018, when, in fact, she had met with M.D. earlier that very day. In addition, Ms. Portillo falsely stated that M.D.'s ex-partner informed Ms. Portillo that M.D. had returned to El Salvador. With respect to M.R., Ms. Portillo falsely told the immigration court on August 21, 2018, among other things, that the Firm's last direct contact with M.R. was in March of 2016, and that they had "lost contact" with M.R. and her son. In truth, Ms. Portillo had met with M.R. on August 17, 2018.

The hearing judge's conclusion of law is correct. Ms. Portillo plainly violated Rule 3.3(a)(1) by knowingly making false statements to the immigration court in both cases.

*Rule 8.1(a) (Bar Admission and Disciplinary Matters)*

Rule 8.1(a) provides, in relevant part, that "an attorney in connection with a … disciplinary matter … shall not … knowingly make a false statement of material fact." The hearing judge concluded that Ms. Portillo violated Rule 8.1(a) with respect to M.D.'s complaint when, in her March and June 2019 responses to Bar Counsel, she intentionally misled Bar Counsel about the reasons that M.D. decided not to appear for her hearing, and failed to disclose her false statements to the immigration court. The hearing judge further concluded that Ms. Portillo violated Rule 8.1(a) with respect to M.R.'s complaint when she falsely stated in her May 2019 response to Bar Counsel that M.R.'s husband and sister provided conflicting information about where M.R. was living in August 2018. The hearing

13

judge concluded that Ms. Portillo further violated Rule 8.1(a) when she falsely stated that she did not meet with M.R. on August 17, 2018, or at any other time to prepare for the August 21, 2018 hearing.

We agree with the hearing judge that Ms. Portillo violated Rule 8.1(a) in her responses to Bar Counsel regarding both clients' complaints.

*Rule 8.4 (Misconduct)*

Rule 8.4 provides, in relevant part:

> It is professional misconduct for an attorney to:
> (a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> …
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
> (d) engage in conduct that is prejudicial to the administration of justice[.]

An attorney violates Rule 8.4(a) if they violate any other rule of professional conduct. *Hoerauf*, 469 Md. at 214. "Dishonest acts, in and of themselves are violative of Rule 8.4(c)." *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 383 (2009) (citations omitted). "Generally, an attorney violates [Rule 8.4(d)] when an attorney's conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Hoerauf*, 469 Md. at 214-15 (cleaned up).

Having violated several other rules of professional conduct, Ms. Portillo violated Rule 8.4(a). *Id.* at 215. We agree with the hearing judge's conclusion that Ms. Portillo's acts constituting violations of Rules 3.3(a)(1) and 8.1(a) also violated Rule 8.4(c). We further agree with the hearing judge that Ms. Portillo violated Rule 8.4(d) by her conduct

14

in both clients' matters. "Conduct which is likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court is conduct prejudicial to the administration of justice." *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 717 (2014) (citation omitted). Advising clients that failing to appear for a scheduled immigration hearing is something they should consider, because it may allow them to stay in the United States longer than they otherwise would, is prejudicial to the administration of justice. When Ms. Portillo then lied to the immigration court about the circumstances that led to the clients' failure to appear, she compounded her already prejudicial and disreputable conduct.

## VI

## Aggravating and Mitigating Factors

"Bar Counsel has the burden of proving the existence of aggravating factors by clear and convincing evidence." *Edwards*, 462 Md. at 708 (citation omitted). "The Respondent in an attorney disciplinary proceeding must prove the presence of mitigating circumstances by a preponderance of the evidence." *Id.* (citation omitted).

We have enumerated the aggravating factors that, if found, are relevant to the appropriate sanction:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [Rules]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including

15

that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling & Sperling*, 459 Md. 194, 275 (2018) (citation omitted).

The hearing judge found the existence of five aggravating factors: (1) a pattern of misconduct; (2) multiple offenses; (3) bad faith obstruction of the disciplinary proceedings; (4) refusal to acknowledge the wrongful nature of the conduct; and (5) vulnerability of the victim. We agree with the hearing judge that these aggravating factors are present in this case.

The hearing judge correctly found that Ms. Portillo demonstrated a pattern of misconduct in both matters and committed multiple offenses. Ms. Portillo engaged in the same type of misconduct in two cases and violated several rules of professional conduct in both matters. *See Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 607 (2016) (finding pattern of misconduct present where the attorney engaged in similar misconduct in representing two clients in different matters); *Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 530 (2015) ("Factor (d), 'multiple offenses,' is implicated when an attorney violates multiple disciplinary rules.").

Further, the hearing judge correctly found that Ms. Portillo engaged in bad faith obstruction of the disciplinary proceedings by failing to participate in the hearing. *See, e.g.*, *Attorney Grievance Comm'n v. Young*, AG No. 23, Sept. Term 2019, slip op. at 26-27 (Md. Mar. 31, 2021). Ms. Portillo similarly failed to participate in the proceedings in this Court. *See id.* The hearing judge also correctly concluded that Ms. Portillo failed to acknowledge

16

the wrongful nature of her misconduct. Indeed, she lied about her actions to Bar Counsel. Finally, the hearing judge correctly concluded that M.D. and M.R are vulnerable victims. *See, e.g.*, *Attorney Grievance Comm'n v. Riely*, 471 Md. 458, 500 (2020) ("Immigrants, especially those at risk of removal from the United States, are a marginalized group that this Court has recognized as vulnerable victims of professional misconduct.").

Ms. Portillo did not present any mitigating factors and, therefore, has not proven any mitigation.

## VII

## The Sanction

In deciding the appropriate sanction, "[w]e are guided by our interest in protecting the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Lewis*, 437 Md. 308, 329 (2014) (internal quotation marks and citation omitted). "As a result, our purpose in deciding the appropriate sanction is not to punish the lawyer, but to protect the public, and deter other lawyers from engaging in similar misconduct." *Edwards*, 462 Md. at 711 (internal quotation marks and citation omitted). "When determining the appropriate discipline, we consider the facts and circumstances of each case and order a sanction that is commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.* at 712 (internal quotation marks and citation omitted).

Disbarment is the appropriate sanction for Ms. Portillo's numerous and severe violations of the MARPC. Ms. Portillo's advice to both clients that they could consider not appearing for their individual hearings was an egregious dereliction of Ms. Portillo's duty

as an officer of the court. Of course, if a client is ill or there are other extenuating circumstances that prevent the client from attending a hearing, an attorney can and should seek a waiver of the client's presence (if appropriate) or a postponement. But an attorney should never advise a client that it is permissible or, even worse (as Ms. Portillo implied to both of her clients), preferable for the client to willfully fail to appear for a hearing. *See Attorney Grievance Comm'n v. Sheinbein*, 372 Md. 224, 254-55 (2002) ("When an officer of the legal system improperly thwarts the mechanisms within it, he shows a disrespect for that system and the public confidence in the legal profession as a whole necessarily suffers a devastating blow."). Based on Ms. Portillo's improper advice, both clients decided not to appear for their hearings, thus ensuring that the immigration court would deny their asylum petitions and order them removed from the United States.

Furthermore, Ms. Portillo exhibited dishonesty on multiple occasions. She brought the legal profession further into disrepute through those acts of dishonesty. "Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character. Disbarment ordinarily should be the sanction for intentional dishonest conduct." *Attorney Grievance Comm'n v. Smith*, 457 Md. 159, 223 (2018) (quoting *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418 (2001)).

Based on the evidence presented at the hearing, which demonstrated a pattern of serious misconduct, we concluded that the public would only be sufficiently protected if Ms. Portillo were disbarred. *See Hoerauf*, 469 Md. at 218; *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 218 (2020) (explaining that the attorney's "multiple infractions involving multiple client matters warrant disbarment"); *Edwards*, 462 Md. at 712 (finding a "pattern of dishonesty [involving multiple clients and multiple infractions] in and of itself warrants disbarment"); *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 228-29 (2012) (same).

For these reasons, on March 26, 2021, we issued a *per curiam* order disbarring Ms. Portillo. *Attorney Grievance Comm'n v. Portillo*, 472 Md. 721 (2021).

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/22a20agcn.pdf