*Attorney Grievance Commission of Maryland v. Gwyn Cara Hoerauf*, Miscellaneous Docket AG No. 7, September Term, 2019. Opinion by Biran, J.

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent Gwyn Cara Hoerauf violated Maryland Lawyers' Rules of Professional Conduct 1.1 (Competence), 1.2(a) (Scope of Representation), 1.3 (Diligence), 1.4(a) and (b) (Communication), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct). Respondent violated Maryland Attorneys' Rules of Professional Conduct 19-303.3(a)(1) (Candor Toward the Tribunal), 19-304.3 (Dealing with Unrepresented Person), 19-308.1(a) and (b) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct). These violations arose from Respondent's conduct in three separate client matters. Respondent facilitated an attorney-client relationship between her client's alleged victim, a 16-year-old minor, and another attorney, and then misled the circuit court in an effort to conceal that relationship and conceal her efforts to dissuade the victim from cooperating with the prosecution. Additionally, Respondent took advantage of the minor victim by gaining her trust in an effort to weaken the prosecution's case against her client. Respondent failed to file motions on a client's behalf, misrepresented she had done so, and failed to communicate the scope and terms of her representation in the client's six cases. In her dealings with Bar Counsel, Respondent failed to timely respond on three occasions, provided inflammatory and unprofessional statements about a complainant, and falsely testified about what she agreed to do for a client. Given these violations and the existence of several aggravating factors, the Court of Appeals held that disbarment was the appropriate sanction.

Circuit Court for Montgomery County
Case No. 468445V
Argued: Argument waived/submitted on papers

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 7

September Term, 2019

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GWYN CARA HOERAUF

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Biran, J.

_____

Filed: June 26, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

On June 20, 2019, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed in this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, Gwyn Cara Hoerauf, alleging violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and the Maryland Attorneys' Rules of Professional Conduct ("MARPC").[1] Petitioner subsequently filed an Amended Petition for Disciplinary or Remedial Action ("Amended Petition"). The Amended Petition concerned three separate complaints against Respondent and alleged violations of MLRPC 1.1 (Competence), 1.2(a) (Scope of Representation), 1.3 (Diligence), 1.4(a) and (b) (Communication), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct). Additionally, Petitioner alleged that Respondent violated MARPC 19-303.3(a)(1) (Candor Toward the Tribunal), 19-304.3 (Dealing with Unrepresented Person), 19-308.1(a) and (b) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct).

On June 20, 2019, pursuant to Maryland Rule 19-722(a), this Court transmitted this matter to the Circuit Court for Montgomery County and designated the Honorable Christopher C. Fogleman (the "hearing judge") to conduct an evidentiary hearing and make findings of fact and conclusions of law in accordance with Maryland Rule 19-727. On August 8, 2019, pursuant to Maryland Rule 19-723(a), Respondent was served with the following: Writ of Summons issued June 28, 2019, by the Circuit Court for Montgomery

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct were renamed the Maryland Attorneys' Rules of Professional Conduct and recodified without substantive changes in Title 19 of the Maryland Rules. Respondent's alleged misconduct occurred both before and after the recodification.

County; Order of the Court of Appeals dated June 20, 2019; and both the Petition and Amended Petition. On August 30, 2019, pursuant to Maryland Rule 2-401(d)(2), Respondent was served with the following: Petitioner's First Set of Interrogatories; Petitioner's First Request for Document Production; and Petitioner's Request for Admissions of Fact and Genuineness of Documents with Exhibits 1-37.

On September 11, 2019, Petitioner filed a Motion for Order of Default after Respondent failed to answer the Amended Petition within 15 days of service. On October 10, 2019, the hearing judge issued an Order of Default and scheduled a hearing for November 15, 2019. The Order notified Respondent that a default had been entered, and that she could move to vacate the Order of Default within 30 days. Respondent did not move to vacate the Order of Default.

Respondent did not appear at the November 15, 2019 hearing, and the hearing judge admitted Petitioner's exhibits into evidence. Petitioner submitted Proposed Findings of Fact and Conclusions of Law on December 9, 2019, based on the evidence admitted at the hearing. The hearing judge issued Findings of Fact and Conclusions of Law on December 30, 2019, based on clear and convincing evidence. Neither Petitioner nor Respondent filed any exceptions, and Petitioner recommended disbarment.

On March 18, 2020, Petitioner filed a request to waive oral argument. This Court issued an Order on March 27, 2020, directing Respondent to show cause why oral argument should be held and stating that, if Respondent failed to show such cause by April 6, 2020, the Court would consider the case on the papers. Respondent did not respond to the Order to Show Cause, and on April 9, 2020, this Court granted Petitioner's request to waive oral

argument. On April 24, 2020, we issued a per curiam order disbarring Respondent. *Attorney Grievance Comm'n v. Hoerauf*, 468 Md. 321 (2020), 2020 WL 1969945, at *1 (Md. Apr. 24, 2020). We explain in this opinion the reasons for that action.

**I**

**The Hearing Judge's Findings of Fact**

We summarize here the hearing judge's findings of fact.

*Background*

Respondent was admitted to the Maryland Bar on December 12, 2000. At all times relevant hereto, Respondent maintained an office for the practice of law in Montgomery County, Maryland.

*Complaint of Peggy Lyles/Representation of Stacy Simmons*

In December 2015, Peggy Lyles retained Respondent to represent her son, Stacy Simmons, in two criminal cases pending in the District Court of Maryland for Montgomery County ("District Court").[2] Respondent agreed to represent Mr. Simmons for a flat fee of $1,000, and required a $300 initial payment before she would enter her appearance or visit Mr. Simmons in jail. Ms. Lyles made the initial $300 payment to Respondent on December 17, 2015, and provided Respondent with a post-dated check for January 1, 2016 for the remaining $700. Respondent represented Mr. Simmons in these two cases without issue, and they were resolved on January 4, 2016, through a plea agreement.

---

[2] *State v. Stacy Terrell Simmons*, District Court Case No. 4D00333029, filed on May 18, 2015; and *State v. Terrell D. Lyles*, District Court Case No. 1D00347418, filed on September 19, 2015 (charging Mr. Simmons under an alias).

On or about January 4, 2016, Ms. Lyles asked Respondent what the fee would be to represent Mr. Simmons in a third criminal case;[3] a hearing had been scheduled in that case for January 12, 2016. Respondent advised Ms. Lyles that she would appear at the January 12 hearing for $250, but that the fee needed to be paid in advance; Ms. Lyles agreed to this arrangement. Respondent visited Mr. Simmons in jail on the evening of January 11, 2016. Mr. Simmons confirmed that he wanted to retain Respondent as counsel for this third case. At 10:30 p.m. on January 11th, Respondent sent a text message to Ms. Lyles stating:

> I went to see Stacey [sic] earlier tonight and he would like me to appear tomorrow and his traffic matter scheduled for February. As for tomorrow, I am agreeing to appear and argue a motion to dismiss for $250. If I win or a loss is followed by a plea, that is my whole fee for tomorrow. If I have to come back or try the case, my fee will be an additional $250. Per our discussion earlier, u were going to bring a check tomorrow for the minimum fee.

Ms. Lyles responded to Respondent's text at 6:15 a.m. the next day, January 12, and stated, "Gwyn[.] We have appointments this morning (last minute from appointment yesterday)[.] I will meet you at your office as soon as we are done without fail…." At 8:45 a.m., Respondent replied, "I have an emergency with my son. Stacey [sic] wanted me to come to argue the motion to dismiss. He should b [sic] entitled to a postponement. If he can get one he should." Respondent did not have an emergency with her son on January 12, 2016. Respondent did not appear at the hearing, and the State entered a *nolle prosequi* to Mr. Simmons's charges.

---

[3] *State v. Terrell D. Lyles*, District Court Case No. 5D00348430, filed on November 13, 2015.

On March 3, 2016, Ms. Lyles filed a complaint against Respondent with Bar Counsel. Bar Counsel forwarded the complaint to Respondent on March 23, 2016, and requested a written response within 15 days. Respondent failed to respond. Bar Counsel wrote to Respondent again on April 29, 2016, and requested a response within 10 days. Respondent replied by letter dated May 17, 2016, and stated, "[Ms. Lyles] is only angry now that her intended theft of my services did not succeed." Respondent also made the following statements:

> From the outset of our interaction, Ms. Lyles impressed me as dishonest and untrustworthy. When she first retained me, she indicated that she could pay my fees, in part, by "selling" me some of the purses her son had stolen during his theft spree. When I expressed my surprise and disapproval at such a proposal, Ms. Lyles tried to suggest it was "a joke." I have no doubt she has acted as her son's accomplice in his theft scheme….

> Peggy Lyles is a malicious and disingenuous person. She apparently acts as a broker for her son's stolen property, which makes her just as guilty of theft as her son.

On July 22, 2016, Bar Counsel forwarded Respondent's letter to Ms. Lyles. On August 22, 2016, Ms. Lyles provided Bar Counsel with her written comments and attached copies of text messages between her and Respondent. On September 21, 2016, Bar Counsel wrote to Respondent, requesting a written response to Ms. Lyles's August 22 letter. Respondent failed to respond. On October 18, 2016, Bar Counsel sent another letter to Respondent, requesting that she respond to Ms. Lyles's letter of August 22. Respondent replied to Bar Counsel by letter dated November 1, 2016, and stated the following regarding her decision not to appear at Mr. Simmons's January 12 hearing after having received Ms. Lyles's text about having a last-minute appointment: "Rather than get into a

5

debate about whether she was in fact going to honor our agreement, I informed her that I also was involved in an emergency and that if her son wanted me to represent him, he could ask for a postponement."

Respondent also made the following statements in her November 1 letter to Bar Counsel:

> My descriptions of Ms. Lyles' veracity and character have been civil, despite that I find her to be a despicable and vindictive individual. She should be relieved that Stacy Simmons, her son, despite his many short-comings, does not exhibit her bad character….
>
> So, in the interest of candor, I do resent being required to defend myself from frivolous complaints like Ms. Lyles'. It is not a reflection of my lawyering as she suggests, but rather on my generosity and desire to help people. Unfortunately, some of those people are unscrupulous, ungrateful, and likely sociopaths. As the saying goes, "no good deed goes unpunished." Ms. Lyles embodies that principle….
>
> She now seems to backtrack on her earlier claims that a "young white male" entered my office, right in front of her and me, and used drugs. She now says it is "possible" that I did not see him use across from my desk. It was not possible for me to have seen the "young white male" do anything in my office because there was only one young white male present and he was obviously a figment of Ms. Lyles' imagination. He was not visible to those of us whose perceptions were still governed by reality. If that is insulting, it was meant to be. I believe I also retain my rights to insult people who attack my professional competence and integrity through insults and false accusations. I will not apologize. It is all I can do to refrain from using the language I believe would be far more appropriate for the likes of Ms. Lyles….
>
> I hope in the future, when allegations can be tested by the public record, you use your considerable resources to do an investigation than put the entire onus on people like myself to prove their innocence when faced with preposterous claims.

On November 22, 2016, Bar Counsel requested by letter that Respondent provide proof of the emergency that prevented her from being able to attend and represent Mr.

Simmons at the January 12, 2016 hearing. Respondent failed to respond. On December 21, 2016, Bar Counsel again wrote to Respondent, requesting a written response to Bar Counsel's November 22 letter. On or about January 2, 2017, Respondent sent a letter to Bar Counsel, which stated: "My 'emergency' was that I was not hired for the case and was not going to allow Ms. Lyles to steal services with fraudulent representations."

On or about September 28, 2017, Respondent and Bar Counsel entered into a Conditional Diversion Agreement ("CDA") under Maryland Rule 19-716. The Attorney Grievance Commission approved the CDA on November 15, 2017, and stayed the underlying disciplinary matter. In the CDA, Respondent conceded that she violated MLRPC Rule 8.1(b) when she failed to timely and completely respond to Bar Counsel, and that she violated MLRPC Rule 8.4(d) when she made disparaging comments about Ms. Lyles. The terms of the CDA provided that Respondent would obtain professional liability insurance and maintain it through the CDA's duration, have her law practice monitored for two years, and consult with the Maryland State Bar Association's Lawyer Assistance Program. The CDA contained an express condition that Respondent not engage in further conduct that would constitute professional misconduct. Respondent failed to comply with the CDA. As discussed in greater detail below, Respondent knowingly and intentionally provided a false statement under oath to Bar Counsel on September 19, 2018, in connection with its investigation of Respondent into a complaint filed by Valerie Brown.

On May 28, 2019, Bar Counsel sent written notice to Respondent, through counsel, of its intention to declare a proposed default of the CDA based on Respondent's false testimony. On July 2, 2019, Bar Counsel filed a Petition to revoke the CDA under

7

Maryland Rule 19-716(h). Respondent did not file an opposition to the Petition. On July 24, 2019, the Attorney Grievance Commission found Respondent to be in material default of the CDA, revoked the CDA, and lifted the stay of the disciplinary proceeding against Respondent relating to Ms. Lyles's Complaint.

*Complaint of Valerie Brown/Representation of Samuel Goldenberg*

Respondent represented Samuel Goldenberg in six criminal cases in the Circuit Court for Montgomery County (the "Circuit Court") and/or the District Court.[4] On September 21, 2012, Mr. Goldenberg was charged with theft in District Court; the case was forwarded to the Circuit Court on December 5, 2012 ("Case One"). On December 28, 2012, Respondent entered her appearance on behalf of Mr. Goldenberg in Case One. Mr. Goldenberg agreed to pay Respondent's standard District Court fee of $1,000 to $1,500.

---

[4] **Case One:** *State v. Samuel Goldenberg*, District Court Case No. 1D00282164, filed on September 21, 2012; case forwarded to the Circuit Court on December 5, 2012, Case No. 121810C.

**Case Two:** *State v. Samuel Goldenberg*, District Court Case No. 0D00282373, filed on October 4, 2012; case forwarded to the Circuit Court on February 11, 2013, Case No. 122195C.

**Case Three:** *State v. Samuel Goldenberg*, District Court Case No. 3D00301787, filed on June 1, 2013.

**Case Four:** *State v. Samuel Goldenberg*, District Court Case No. 0D00311262, filed on July 26, 2013; case forwarded to the Circuit Court on August 29, 2013, Case No. 123428C.

**Case Five:** *State v. Samuel Goldenberg*, District Court Case No. 4D00294151, filed on September 2, 2013; case forwarded to the Circuit Court on October 30, 2013, Case No. 123774C.

**Case Six:** *State v. Samuel Goldenberg*, District Court Case No. 6D00308125, filed on November 17, 2013; case forwarded to the Circuit Court on December 12, 2013, Case No. 124083C.

On October 4, 2012, Mr. Goldenberg was charged in District Court with one count of credit card theft and four counts of fraud; the case was forwarded to the Circuit Court on February 11, 2013 ("Case Two"). Respondent entered her appearance on behalf of Mr. Goldenberg in Case Two on February 12, 2013.

Mr. Goldenberg subsequently accepted a plea agreement resolving both Cases One and Two. On April 1, 2013, Mr. Goldenberg was sentenced in Case One to an 18-month suspended sentence and two years of supervised probation. He received a concurrent 18-month suspended sentence and term of probation in Case Two.

On June 1, 2013, Mr. Goldenberg was charged in District Court with seven theft-related counts, three fourth-degree burglary counts, and one marijuana possession count ("Case Three"). Respondent represented Mr. Goldenberg in Case Three, and on August 13, 2013, a *nolle prosequi* was entered as to each charge.

On July 26, 2013, Mr. Goldenberg was charged in District Court with one count of possession with intent to distribute a controlled dangerous substance ("CDS"), one count of dispensing a prescription drug, and one count of drug paraphernalia possession; the case was forwarded to the Circuit Court on August 29, 2013 ("Case Four"). These new charges were potentially a violation of Mr. Goldenberg's probation in Cases One and Two.

On September 2, 2013, Mr. Goldenberg was charged in District Court with six theft-related counts and two counts of rogue and vagabond; the case was forwarded to the Circuit Court on October 30, 2013 ("Case Five").

Mr. Goldenberg wanted Respondent to represent him in his pending cases (Cases Four and Five) but was unable to pay her fee. In or around October 2013, Mr. Goldenberg's

9

mother, Valerie Brown, contacted Respondent and asked her to represent Mr. Goldenberg. Ms. Brown told Respondent that she would pay her fee any way she could.

On November 17, 2013, Mr. Goldenberg was charged in District Court with one count of first-degree burglary, six theft-related counts, two CDS possession counts, and one drug paraphernalia count; the case was forwarded to the Circuit Court on December 12, 2013 ("Case Six").

At Ms. Brown's request, Respondent agreed to represent Mr. Goldenberg in Cases Four, Five, and Six, as well as his probation violation in Cases One and Two, for a flat fee of $5,000. Respondent did not enter into a written fee agreement with Mr. Goldenberg or Ms. Brown with respect to any of the six cases. Ms. Brown paid Respondent the following: $800 by check dated October 28, 2013; $200 by check dated November 2, 2013; $50 by check dated January 26, 2014; and a book of garden photographs taken by Ms. Brown as payment in kind.

On May 7, 2014, Ms. Brown emailed Respondent asking about the value she gave to four canvas photographs that Ms. Brown had also given to Respondent as payment in kind. Ms. Brown suggested a total value of $1,000 for the four canvases, noting that she sells such photographs for $375 apiece. Respondent did not reply to Ms. Brown's email, but admitted to crediting Ms. Brown $1,000 for the four canvases.

On December 19, 2013, Respondent entered her appearance in Cases Four, Five, and Six, and on February 11, 2014, Mr. Goldenberg pled guilty under the terms of a global plea agreement. On May 1, 2014, Mr. Goldenberg appeared for sentencing in Cases Four, Five, and Six, and for the violation of probation in Cases One and Two. He received

10

concurrent sentences totaling 10 years of executed jail time, as well as five years of probation. Following sentencing, Respondent informed Mr. Goldenberg that she would file a motion for modification of sentence, which pursuant to Maryland Rule 4-345(e)(1), was required to be filed 90 days after sentencing. Respondent failed to file the motion for modification of sentence, and failed to advise Mr. Goldenberg that she did not file the motion.

On or about October 20, 2014, Mr. Goldenberg wrote Respondent and requested that she obtain the property seized from him during his arrest, including his cell phone and $455 in cash. Mr. Goldenberg told Respondent that she could keep the $455 as part of her fee, but asked that the other property be returned to his mother. Respondent did not respond to Mr. Goldenberg's letter. On or about December 11, 2014, Ms. Brown exchanged text messages with Respondent about the return of Mr. Goldenberg's property, in which Ms. Brown stated that she wanted Respondent to have the money but that she wanted Mr. Goldenberg's phone back to facilitate canceling his cellular service with Verizon.

Following sentencing, Mr. Goldenberg and his mother asked Respondent to file a motion for drug treatment. On December 11, 2014, Respondent and Ms. Brown exchanged the following text messages:

> Ms. Brown: Were you able to file forms
>
> Respondent: I mailed then [sic] in yesterday so they will b docketed by Friday
>
> The motion for trea[tm]ent

Respondent never drafted or filed a motion for drug treatment. The hearing judge found that Respondent knowingly and intentionally misrepresented to Ms. Brown that she had filed such a motion.

On March 2, 2015, Respondent requested that the State return the $455 seized from Mr. Goldenberg and, on April 7, 2015, she received a check in that amount made payable to Samuel Goldenberg, c/o Gwyn Hoerauf. Respondent kept the $455 as payment of her fee for representing Mr. Goldenberg. Respondent did not request the return of Mr. Goldenberg's other property, nor did she inform Mr. Goldenberg or his mother that she had failed to request the return of Mr. Goldenberg's cell phone.

On August 25, 2017, Ms. Brown filed a complaint with Bar Counsel against Respondent. On September 1, 2017, Bar Counsel forwarded the complaint to Respondent, through counsel, and requested a written response.

On September 19, 2018, Bar Counsel took Respondent's statement under oath in connection with Ms. Brown's complaint. Respondent knowingly and intentionally falsely testified that she did not inform Mr. Goldenberg or his mother that she would attempt to secure the return of Mr. Goldenberg's personal property that was seized during his arrest. When asked how much she charged and collected as a fee for each of Mr. Goldenberg's cases, Respondent was unable to articulate the amount of fees charged and paid by Mr. Goldenberg or his mother in cash or in kind. Respondent never prepared any written retainer agreements, invoices, or accountings in connection with her representation of Mr. Goldenberg.

*Complaint of April Ademiluyi/Representation of Eric Solomon*

In or about November 2016, Eric Solomon retained Respondent to represent him in a case pending in the District Court, in which he was charged with crimes relating to allegations that he sexually assaulted K.J., his 16-year-old minor cousin.[5]

During the pendency of the case in the District Court, Respondent invited and met with K.J. at her office. K.J. was 17 at the time and accompanied by her parents, but Respondent insisted on meeting with K.J. alone. During the meeting, K.J. told Respondent that she did not want her family to know about her sexual history and drug and alcohol use. Respondent advised K.J. of the types of cross-examination questions that might be asked if the case went to trial, and told K.J. that her personal information could be admitted into evidence through her testimony, including the fact that K.J. had asked her sister and cousin for a ride to CVS to purchase a Plan B pill. Additionally, Respondent told K.J. that she had difficulty believing that K.J. had been raped, that her statements did not evidence criminal assault but rather inappropriate and embarrassing behavior, and that K.J. was blaming someone else because that is what young women do when they regret their decisions about sex. Respondent also discussed topics with K.J. that were unrelated to the alleged incident, including gender discrimination and cultural issues. Respondent encouraged K.J. to take advantage of her American residency, educate herself, and work on shedding all the shame and discrimination that, Respondent believed, defined K.J.'s experience.

---

[5] *State v. Eric A. Solomon*, District Court Case No. 1D00362769, filed on September 20, 2016.

13

K.J. responded warmly to Respondent and seemed to appreciate talking to Respondent because she felt that Respondent would not judge her. K.J. told Respondent she had not trusted the adults in her life, and asked Respondent to tell Mr. Solomon that what happened between them was wrong and that he should seek counseling. Respondent agreed to relay K.J.'s message to Mr. Solomon. K.J. also told Respondent she did not want to go trial and asked Respondent how she could get out of it. Respondent exchanged personal text messages with K.J. after their meeting.

With respect to the meeting between Respondent and K.J., the hearing judge found:

Respondent's true purpose for meeting with K.J. was not to investigate her client's case, but rather to improperly dissuade K.J. from participating in the criminal prosecution of her client, Mr. Solomon. In speaking with K.J., Respondent intentionally emphasized the potential embarrassment she might suffer if the case proceeded to trial and took advantage of a vulnerable minor's insecurities. Respondent intended for her comments to discourage K.J. from cooperating, which, by no coincidence, would have benefitted her client. Furthermore, Respondent intentionally obfuscated her role as counsel for K.J.'s alleged abuser by initiating a personal conversation with K.J. involving subjects unrelated to the criminal case, such as gender discrimination and cultural issues, and then exchanging personal text messages with her after the meeting. In doing so, Respondent gained K.J.'s trust and misled her to believe that she was an advocate for her best interest. Respondent's actions were intended to benefit her client, the person accused of assaulting K.J.

On December 23, 2016, the State entered *nolle prosequi* on all counts in the District Court case against Mr. Solomon. Mr. Solomon subsequently was indicted in the Circuit Court based on the same allegations of sexual assault of K.J.[6] On March 16, 2017, Respondent entered her appearance in the Circuit Court on behalf of Mr. Solomon.

---

[6] *State v. Eric A. Solomon*, Case No. 131311C, filed on March 2, 2017.

14

During the pendency of the Circuit Court case, K.J.'s parents asked Respondent to recommend an attorney to represent K.J. Respondent had a pre-existing professional relationship with attorney April Ademiluyi and, on or about September 30, 2017, communicated with Ms. Ademiluyi about the possibility of Ms. Ademiluyi representing K.J. "for the limited purpose of discussing the victim's rights." Respondent informed Ms. Ademiluyi that K.J. had not been sexually assaulted, but rather had engaged in consensual sex with Mr. Solomon. Respondent told Ms. Ademiluyi that Mr. Solomon's father would pay Ms. Ademiluyi's $1,000 fee.

Based on Respondent's recommendation, K.J.'s family retained Ms. Ademiluyi. During Ms. Ademiluyi's representation of K.J., Respondent and Ms. Ademiluyi continued to communicate and share information about the case. On or about October 7, 2017, Respondent and Ms. Ademiluyi had the following text message exchange:

Respondent: [K.J.] and her parents deliberately met with the state, despite my admonition that it would not stop the prosecution and would only make it more likely. We are requesting a postponement since we did not receive all the discovery timely.

Ms. Ademiluyi: I'm not aware of any discovery you did not receive timely. I don't have the state's evidence. [K.J.] told me you saw all the text messages. I want to meet Eugene [Solomon] in person. Do you want to come?

The state is very aggressive about this case. They will be arrest anyone who fails to appear at trial. Elizabeth [Haynos] is going to aggressively pursue. I told you this case is not under [K.J.]'s control.

Respondent: No. It is my understanding that you may have facilitated [K.J.] turning over more evidence to the state. The state just provided us with a shit ton of new txts with your email

15

on it. I referred [K.J.] to her own lawyer bc it was my belief she wanted to avoid the trial and I can't advise her. If she just wanted my client to plea and go to jail (that's what the state is asking for) she wouldn't need her own lawyer. The state will happily ruin everyone's family and privacy on the taxpayer dime. They typically don't need help.

(All sic in the original).

Later in the same text message exchange, Respondent stated:

I am Eric's attorney. I have no duty to provide evidence to help bolster the states case, nor should I. I don't think the evidence is relevant or admissible, but that is not the point. If [K.J.] doesn't want to testify, it seems contradictory to provide the state more evidence to support her claims. It is not your role to suggest to my client's family that he should plea to something. I trusted you to help this girl find a way out of this, which is what she indicated she wanted. Once you learned she is insisting on having been "forced" and that she would testify to that, and you helped and reinforced her belief towards that end you chose to take a position adversarial to my client and his family.

What doesn't make any sense is that you told me that she didn't want to go forward. How have you helped her achieve that goal? …

I did tell you about the legal shortcomings of the states case, which is how you were supposed to get [K.J.] out if this. She made conclusory statements about force and rape that are just not corroborated by the circumstantial evidence. When I spoke with her many months ago, she understood that.

(All sic in the original).

Based on the communications between Respondent and Ms. Ademiluyi and Respondent's meeting with K.J., the hearing judge found that "Respondent was attempting to use Ms. Ademiluyi to further aid Respondent's efforts to improperly dissuade K.J. from cooperating with the State in their prosecution of Mr. Solomon. The fact that Mr. Solomon's father was willing to pay Ms. Ademiluyi's fee is further evidence that Ms. Ademiluyi was being used to help Mr. Solomon."

16

On the first day of trial, October 10, 2017, Respondent and her co-counsel requested a continuance because Mr. Solomon was in the hospital following a suicide attempt on the prior evening. During the hearing, the State argued that Mr. Solomon and his family were involved in a campaign to influence K.J. against cooperating in the case. The prosecutor represented that,

> since the beginning of this case, I've had extreme difficulty in meeting with the victim and her family in this case … I was never even able to do a meet-and-greet until this past Thursday, when the 17-year-old victim and her mother came into my office and we met. She was fully cooperative and willing to go forward, unlike what my impression had been before that.
>
> I never communicated this information to defense counsel; however, they somehow knew that I had met with the victim and her mother. I also came into contact last week and over the weekend with the victim's attorney, who represents her, and through my contact with that attorney learned that there had been promises of money made to the victim in private conversations between defense counsel and the victim and her parents in exchange for her not going forward for this testimony, representations by defense counsel to the victim about the weakness of the State's case, and in addition to that, promises by the defendant's family of compensation to the victim in exchange for her not going forward with this trial.
>
> It became clear in my conversations with defense counsel that the impression was that these campaigns and these promises had been successful and that the victim was not going to go forward and that, to paraphrase, this was just going to be a nolle, and they were not prepared to go forward to trial today. I made it extremely clear that that was not the case, that the State was going to go forward, that the victim was cooperative and willing to testify, and prior to these conversations and to defense counsel becoming aware of the State's conversations with the victim, I had not heard one word about a continuance.
>
> It was not until defense counsel became aware of the State's conversations with the victim that the word continuance was ever mentioned. So to say that I view this hospitalization with skepticism is an understatement….

In response, Respondent stated:

> There were no promises, to my knowledge, made about anything. There was a number – obviously, me and my co-counsel have no control over what happens outside of our respective offices or in the presence of us and whatnot, and none of us is, as I have always understood it – there was never representations made to the victim about anything that she was going to get or not get that I have any knowledge of. This is the first I'm hearing of it. *This attorney that she supposedly has, has only been involved in this case for I think less than a week, so I don't know what knowledge she could possibly have about what transpired in the past.*

(Emphasis added.)

The hearing judge found that Respondent's statement to the court, italicized above, was a knowing and intentional misrepresentation:

> Respondent intentionally misled the Court regarding her interactions with K.J. and Ms. Ademiluyi. Contrary to Respondent's statements to the Court, Respondent facilitated the attorney-client relationship between K.J. and Ms. Ademiluyi and provided Ms. Ademiluyi with information regarding the case, the victim and Mr. Solomon's family dynamics.

On or about October 18, 2017, the trial judge in Mr. Solomon's case granted Mr. Solomon's oral motion to strike Respondent's appearance as his counsel, and on February 20, 2018, Mr. Solomon pled guilty to sexual abuse of a minor.

## II

## The Hearing Judge's Conclusions of Law

Based on the record and the above-summarized findings of fact, the hearing judge concluded, by clear and convincing evidence, that Respondent violated MLRPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 8.1(b), and 8.4 (a), (c), and (d), as well as MARPC 19-303.3(a)(1), 19-304.3, 19-308.1(a) and (b), and 19-308.4(a), (c), and (d). Neither Respondent nor Petitioner filed exceptions.

18

## III

## Standard of Review

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding and conducts an independent review of the record. The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous…. We review the hearing judge's conclusions of law without deference." *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 682-83 (2019) (internal quotation marks and citations omitted). Where, as here, neither party files any exceptions to the hearing judge's findings of fact, we "may treat the findings of fact as established." Md. Rule 19-741(b)(2)(A). We deem the hearing judge's findings of fact to be established in this case.

## IV

## Discussion

We now consider the hearing judge's conclusions of law. For the reasons we discuss below, we hold that clear and convincing evidence demonstrates that Respondent violated MLRPC 1.1 (Competence), 1.2(a) (Scope of Representation), 1.3 (Diligence), 1.4(a) and (b) (Communication), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct). We also conclude that clear and convincing evidence exists that Respondent violated MARPC 19-303.3(a)(1) (Candor Toward the Tribunal), 19-304.3 (Dealing with Unrepresented Person), 19-308.1(a) and (b) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct).

*MLRPC 1.1 (Competence)*

At the time Respondent represented Mr. Goldenberg, Rule 1.1 provided:

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

In general, this Court will find a violation of Rule 1.1 "if an attorney fails to act or acts in an untimely manner, resulting in harm to his or her client." *Edwards*, 462 Md. at 694.

The record is clear that Respondent violated Rule 1.1 in the Brown/Goldenberg matter when she: (1) failed to file a motion for modification of sentence pursuant to Md. Rule 4-345, after informing Mr. Goldenberg she would do so, and then failed to advise him that she did not file such a motion; (2) failed to file a motion for drug treatment on Mr. Goldenberg's behalf, then misrepresented to Ms. Brown that she had filed such a motion; (3) failed to request the return of Mr. Goldenberg's personal property, specifically, his cell phone, despite informing Ms. Brown that she would do so; and (4) failed to inform Mr. Goldenberg or Ms. Brown that she had not requested the return of Mr. Goldenberg's cell phone. These acts and omissions, taken separately or together, demonstrate by clear and convincing evidence that Respondent failed to provide competent representation to Mr. Goldenberg.

*MLRPC 1.2 (Scope of Representation)*

At the time Respondent represented Mr. Goldenberg, Rule 1.2(a) provided:

> Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall

20

abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive a jury trial and whether the client will testify.

This Rule requires that an attorney inform a "client of the status of his or her case so the client has the ability to make informed decisions[.]" *Edwards*, 462 Md. at 697 (internal quotation marks and citations omitted).

We agree with the hearing judge that Respondent violated Rule 1.2(a) in the Brown/Goldenberg matter for the reasons discussed in reference to Rules 1.1 and 1.4.

*MLRPC 1.3 (Diligence)*

At the time Respondent represented Mr. Goldenberg, Rule 1.3 provided: "A lawyer shall act with reasonable diligence and promptness in representing a client." This Rule "can be violated by failing to advance the client's cause or endeavor; failing to investigate a client's matter; and repeatedly failing to return phone calls, respond to letters, or provide an accounting for earned fees." *Edwards*, 462 Md. at 699 (internal quotation marks and citations omitted). "The same rationale that supports a [Rule 1.1] violation can support a [Rule 1.3] violation." *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 209 (2020) (citing *Edwards*, 462 Md. at 699).

We agree with the hearing judge that Respondent violated Rule 1.3 in the Brown/Goldenberg matter for the reasons stated in reference to Rules 1.1 and 1.4.

*MLRPC 1.4 Communication*

At the time Respondent represented Mr. Goldenberg, MLRPC 1.4 provided:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

This Rule requires that attorneys "communicate with their clients and keep their clients reasonably informed of the status of their case." *Edwards*, 462 Md. at 699.

We agree with the hearing judge's conclusion that Respondent violated Rule 1.4(a) and (b) in the Brown/Goldenberg matter when she: (1) failed to advise Mr. Goldenberg that she did not file the motion for sentence modification and motion for drug treatment; (2) misrepresented to Ms. Brown that she had filed the motion for drug treatment; (3) failed to inform Mr. Goldenberg and Ms. Brown that she did not request the return of Mr. Goldenberg's cell phone; and (4) failed to adequately communicate the scope of her representation, either in writing or orally, by failing to explain what services she would and would not provide. Respondent further violated Rule 1.4(b) in the Brown/Goldenberg

matter when she failed to communicate the terms of her representation in a written fee agreement, or otherwise, in any of Mr. Goldenberg's six cases.

*MARPC 19-303.3 (Candor Toward the Tribunal)*

Rule 19-303.3(a)(1) provides that an attorney shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to a tribunal by the attorney." "This duty stems from the proposition that every court has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it." *Attorney Grievance Comm'n v. Ambe*, 466 Md. 270, 295 (2019) (cleaned up) (internal quotation marks and citation omitted). Thus, this Rule requires that an attorney be candid at all times with a tribunal. *Id.* An attorney "violates MARPC 19-303.3(a)(1) when he or she knowingly provides a court with false information." *Id.*; *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 32 (2006).

The hearing judge found that Respondent violated Rule 19-303(a) in the Ademiluyi/Solomon matter when she knowingly and intentionally misrepresented to the circuit court that she did not know what knowledge Ms. Ademiluyi could have regarding past events in Mr. Solomon's case. The hearing judge based this conclusion on the evidence presented at the hearing which showed that Respondent herself had provided information about the case, the victim, and Mr. Solomon's family dynamics to Ms. Ademiluyi. The hearing judge further found that Respondent intentionally misled the court about Ms. Ademiluyi's source of knowledge in order to conceal Respondent's involvement in facilitating the attorney-client relationship between Ms. Ademiluyi and K.J., as well as Respondent's efforts to dissuade K.J. from cooperating with the prosecution. The hearing

23

judge's findings provide clear and convincing evidence to support the conclusion that

Respondent violated Rule 19-303.3 through this conduct.

*MARPC 19-304.3 (Dealing with Unrepresented Person)*

Rule 19-304.3 provides:

> An attorney, in dealing on behalf of a client with a person who is not represented by an attorney, shall not state or imply that the attorney is disinterested. When the attorney knows or reasonably should know that the unrepresented person misunderstands the attorney's role in the matter, the attorney shall make reasonable efforts to correct the misunderstanding.

Comment 1 to this Rule explains that "[a]n unrepresented person, particularly one not experienced in dealing with legal matters, might assume that an attorney is disinterested in loyalties or is a disinterested authority on the law even when the attorney represents a client." This Rule does not prohibit an attorney from contacting an unrepresented person in connection with a legal matter, but it does require that, in dealing with an unrepresented person, the attorney not mislead him or her about the attorney's role in the matter.

The hearing judge found that Respondent's communications and interactions with K.J. in the Ademiluyi/Solomon matter violated Rule 19-304.3 because Respondent

> obfuscated her role in the matter. Respondent gave K.J. the impression that she was an advocate for K.J.'s best interest, instead of clearly stating that her role in the matter was to defend K.J.'s alleged abuser, Mr. Solomon. Respondent knew that K.J. appreciated talking to her because she did not feel judged, and Respondent continued to mislead K.J. about her role in the case when she exchanged personal text messages after their meeting.

The hearing judge further found that "Respondent knew K.J. did not understand Respondent's role in the matter and instead of correcting the misunderstanding, she perpetuated it in an effort to weaken the State's case against her client." The hearing judge's

24

findings constitute clear and convincing evidence that Respondent violated MARPC 19-304.3 in her interactions with K.J.

*MLRPC 8.1/MARPC 19-308.1 (Bar Admission and Disciplinary Matters)*

Rule 19-308.1 provides:

> An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> (a) knowingly make a false statement of material fact; or
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

An attorney violates Rule 8.1(a)/Rule 19-308.1(a) when he or she knowingly makes a false statement of material fact in a disciplinary matter. *Ambe*, 466 Md. at 296. An attorney violates Rule 8.1(b)/Rule 19-308.1(b) when he or she fails to respond to Bar Counsel's lawful request for information. *Edwards*, 462 Md. at 705. "The rule does not distinguish between attorneys who fail to respond to lawful demands due to dilatoriness, on the one hand, and those on the other hand, who intentionally fail to respond." *Id.* (internal quotation marks and citation omitted). "Moreover, belated participation in a Bar Counsel investigation does not overcome a violation of failing to respond to Bar Counsel in the first instance." *Id.* (cleaned up) (internal quotation marks and citation omitted).

The hearing judge found that Respondent violated Rule 19-308.1(a) in the Brown/Goldenberg matter when she knowingly and intentionally misrepresented to Bar Counsel that she did not tell Mr. Goldenberg or Ms. Brown that she would attempt to obtain

25

the personal property seized from Mr. Goldenberg at the time of his arrest. The hearing judge found that Respondent violated Rule 8.1(b) and Rule 19-308.1(b) in the Lyles/Simmons matter when she failed to timely and completely respond to Bar Counsel's correspondence dated March 23, 2016, September 21, 2016, and November 22, 2016. We agree with the hearing judge's conclusions regarding these violations.

*MLRPC 8.4/MARPC 19-308.4 (Misconduct)*

Rule 19-308.4 provides, in part:

It is professional misconduct for an attorney to:

(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

An attorney violates Rule 19-308.4(a) if he or she violates any other Rule under the MARPC. *Edwards*, 462 Md. at 706; *Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 664 (2016). "Dishonest acts, in and of themselves are violative of [Rule 19-308.4(c).]" *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 383 (2009) (citations omitted). Generally, an attorney violates Rule 19-308.4(d) "when [an attorney's] conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 696 (2013) (quoting *Attorney Grievance Comm'n v. Rand*, 411 Md. 83, 96 (2009)). Misconduct that constitutes a violation of Rule

19-308.4(c) may also violate Rule 19-308.4(d). *Edwards*, 462 Md. at 706 (citing *Attorney Grievance Comm'n v. Worsham*, 441 Md. 105, 129-30 (2014)).

Having violated several other Rules of Professional Conduct, Respondent violated Rule 8.4(a)/19-308.4(a). *Framm*, 449 Md. at 664.

Respondent violated Rule 8.4(c) in the Brown/Goldenberg matter when she knowingly and intentionally misrepresented to Ms. Brown via text message that she had mailed the motion for drug treatment to the court, even though Respondent never prepared or filed such motion. The hearing judge found that Respondent made this misstatement to Ms. Brown with the intent to deceive her. We also agree with the hearing judge that Respondent's violation of Rule 19-308.1(a) in the Brown/Goldenberg matter constitutes a violation of Rule 19-308.4(c). Respondent also violated Rule 19-308.4(c) in the Ademiluyi/Solomon matter when she made a knowing and intentional misrepresentation to the circuit court in order to conceal the extent of her efforts to dissuade K.J. from cooperating with the prosecution, including facilitating the attorney-client relationship between Ms. Ademiluyi and K.J. We also conclude that Respondent's efforts to dissuade K.J. from cooperating with the prosecution, in a case in which K.J. alleged that she had been sexually abused, violated Rule 19-308.4(d). This conduct is prejudicial to the administration of justice in that it "tends to bring the legal profession into disrepute." *Attorney Grievance Comm'n v. Reno*, 436 Md. 504, 511 (2014) (internal quotation marks and citation omitted).

We further agree with the hearing judge that Respondent violated Rule 8.4(d) in the Lyles/Simmons matter based on Respondent's untimely responses to Bar Counsel, which

included unprofessional and irrelevant statements about the complainant, Ms. Lyles. This conduct also tends to bring the legal profession into disrepute and is therefore prejudicial to the administration of justice.

In sum, we conclude that there is clear and convincing evidence that Respondent violated Rule 8.4/Rule 19-308.4, as discussed above.

**V**

**Aggravating and Mitigating Factors**

"Bar Counsel has the burden of proving the existence of aggravating factors by clear and convincing evidence." *Edwards*, 462 Md. at 708 (citation omitted). "The respondent in an attorney disciplinary proceeding must prove the presence of mitigating circumstances by a preponderance of the evidence." *Id.* (citation omitted).

We recently enumerated the aggravating factors that, if found, are relevant to the appropriate sanction:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [Rules]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018) (citation omitted).

Petitioner alleged the existence of the following aggravating factors in this matter: (1) prior disciplinary offenses; (2) dishonest or selfish motive; (3) pattern of misconduct;

(4) multiple offenses; (5) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; and (6) substantial experience in the practice of the law.

Respondent was suspended from the practice of law for 30 days by Order of the Court of Appeals dated June 4, 2014. Thus, the hearing judge correctly found that Respondent had committed a prior disciplinary offense. The hearing judge also correctly found that Respondent demonstrated a dishonest motive when she made knowing and intentional misrepresentations to the circuit court during her representation of Mr. Solomon, and that she further demonstrated a dishonest motive when she falsely stated to Ms. Brown that she had mailed the motion for drug treatment to the court on Mr. Goldenberg's behalf. The hearing judge also correctly found that Respondent demonstrated a pattern of misconduct in all three matters and committed multiple offenses. Further, the hearing judge correctly concluded that Respondent engaged in bad faith obstruction of the disciplinary investigation when she failed to timely respond to Bar Counsel in the Lyles/Simmons matter and failed to participate in any manner in the proceedings before the hearing judge. Finally, the hearing judge correctly found that Respondent has substantial experience in the practice of law, having been admitted to the Maryland Bar on December 12, 2000.

Respondent did not present any mitigating factors and, therefore, has not proven any mitigation.

29

# VI

## The Sanction

In deciding the appropriate sanction, "[w]e are guided by our interest in protecting the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Lewis*, 437 Md. 308, 329 (2014) (internal quotation marks and citation omitted). "As a result, our purpose in deciding the appropriate sanction is not to punish the lawyer, but to protect the public, and deter other lawyers from engaging in similar misconduct." *Edwards*, 462 Md. at 711 (internal quotation marks and citation omitted). "When determining the appropriate discipline, we consider the facts and circumstances of each case and order a sanction that is commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.* at 712 (internal quotation marks and citation omitted).

Disbarment is the appropriate sanction for Respondent's numerous and severe violations of the MLRPC and MARPC. Respondent exhibited dishonesty on multiple occasions. She brought the legal profession into serious disrepute through those acts of dishonesty, and through her attempts to dissuade K.J., an alleged victim of sexual abuse, from cooperating in the prosecution of her alleged abuser, Respondent's client. We find it particularly troubling that Respondent engaged in misconduct relating to the Ademiluyi/Solomon matter while the disciplinary proceeding in the Lyles/Simmons matter was in progress, and after having previously been suspended from the practice of law for 30 days in 2014. Based on the evidence presented at the hearing, which demonstrated a pattern of serious misconduct, we conclude that the public will only be sufficiently

protected through Respondent's disbarment. *See Bah*, 468 Md. at 218 (explaining that the attorney's "multiple infractions involving multiple client matters warrant disbarment"); *Edwards*, 462 Md. at 712 (finding a "pattern of dishonesty [involving multiple clients and multiple infractions] in and of itself warrants disbarment"); *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 228-29 (2012) (same).

For the reasons set forth in this opinion, we issued a per curiam order disbarring Respondent on April 24, 2020. *Hoerauf*, 468 Md. at 321-22, 2020 WL 1969945, at *1.